RUDIE CAIN et al., Appellants, v. CHARLES S. MILBURN et al., Appellees.

**DIVORCE:   Presumption in re Decree Against Insane Defendant.   A**
1    decree of divorce, rendered at a time when the defendant is insane, carries a presumption that it was granted on causes fully accrued prior to insanity.

**DIVORCE:   Decree Against Insane Defendant—Fraud.   Evidence held**
2    insufficient to establish fraud in obtaining a divorce from an insane wife.

**DIVORCE:   Insanity of Defendant.   Insanity of a defendant is no bar**
3    to an action for divorce for grounds fully matured prior to the insanity.

**DEEDS:   Deed by Insane Wife Followed by Her Divorcement.   The fact**
4    that a deed executed by a wife for the purpose of relinquishing dower was executed while she was insane, becomes immaterial when, subsequent to said execution, the husband obtains a divorce from said wife.

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.

DECEMBER 13, 1921.

ACTION in equity by the heirs of Christiana Pollock, now deceased, who was divorced by her husband, James Pollock, about 24 years ago, to set aside the decree of divorce. Plaintiffs claim that, because the divorce decree was invalid, their mother, Christiana Pollock, was entitled to her distributive share in the estate of her husband, James, who had predeceased her, and that plaintiffs are entitled to such share. They also claim that a deed executed about 25 years ago by James and Christiana to defendant Milburn for a part of the land was invalid because of the mental incapacity of Christiana to execute the deed. Plaintiffs ask that both the decree of divorce and the deed be set aside. Defendants filed cross-petition, asking that they be adjudged to be the fee-simple owners of the property, and that their title be quieted. The land in controversy consists of 120 acres. After full trial, the plaintiffs' petition was dismissed, and defendants were granted the relief asked by them. The plaintiffs appeal.—*Affirmed.*

*B. L. Wick* and *L. M. Kratz,* for appellants.

*Johnson, Donnelly & Swab.* and *Deacon, Good, Sargent & Spangler,* for appellees.

PRESTON, J.—The name of L. M. Kratz, administrator, was stricken from the petition, on motion of defendants, as having no interest. We do not understand that any complaint is made of this.

About 1881, the mother of plaintiffs, Christiana Pollock, was married to Alexander Cain. They lived together about 11 months, when she obtained a divorce from Cain, on the ground of cruel and inhuman treatment. The plaintiff Rudie Cain, now about 40 years of age, is a son by this first marriage. The other four plaintiffs are children of Christiana by her second husband, Pollock. Rudie Cain was about 9 months old at the time of the first divorce. Soon after that divorce, Cain married another woman. Cain was a witness for plaintiffs herein. He testifies to two or three circumstances which he says occurred during his married life with Christiana which would tend to show that she was of unsound mind at that time. He testifies

that, in his opinion, she was not right, and was of unsound mind. The circumstances, or some of them, might also indicate cruelty towards Cain by his wife. He says that is the reason he left her; but that, about six months thereafter, she obtained a divorce from him on the ground of cruelty. Cain says he thinks she was all right when she obtained her divorce from him. His is the only evidence tending to show that she was of unsound mind, or insane, until she was adjudged insane, 10 or 12 years thereafter, in 1894. She married James Pollock in 1883. It is not claimed by plaintiffs that such marriage was invalid because of her unsoundness of mind or insanity. On the contrary, they contend that the marriage with Pollock was legal. Four children were born to Pollock and his wife, Christiana— four of the plaintiffs in this case. The oldest of these four is 35 or 36 years old. Under all the circumstances, the testimony of Cain as to her unsoundness of mind when Christiana was his wife does not appeal to us very strongly. In 1894, Christiana was adjudged insane, and sent to the asylum, where she remained until she was removed to the county home in Lynn County, where she died. Pollock brought her back from the asylum twice, for a short time, but she was taken back. It is conceded that, after 1894, she never regained her sanity.

In 1895, James Pollock and his wife, Christiana, executed a deed to defendant Milburn for 50 acres of the land in controversy. At the time of the execution of this deed, Christiana was an inmate of the asylum. It was acknowledged by her before the superintendent of the asylum, who was a notary public. James Pollock executed a mortgage to Milburn, to indemnify him against any claim that might be made by Christiana for her distributive share. It is claimed by plaintiffs that this deed was void as to her. There might be force in their contention, but for a decree of divorce subsequently granted her husband, wherein it was decreed that said ''Christiana Pollock has no homestead or dower right in and to any property accrued or conveyed by this plaintiff, James Pollock.''

In 1896, James Pollock began a suit for divorce against his wife, Christiana, on the ground of cruel and inhuman treatment. Original notice of this suit was properly served upon her, as the statute requires. A guardian ad litem was appointed, and

filed answer, denying the allegations of the petition, and asking that the court protect her interests. The court was advised as to the situation, and in February, 1897, a decree of divorce was granted plaintiff from Christiana, containing the provision as to property before set out.

The petition for divorce in that case, verified by plaintiff, alleges that the acts of cruelty complained of occurred in the years 1884, 1888, 1889, 1890, 1891, and 1892. The petition asks for general equitable relief, and for the custody of the four children, who were quite young at that time. The decree did not specifically award James the custody of the children, but it does say that the plaintiff therein was entitled to the other and further relief therein prayed. We assume that James Pollock took charge of the children, because Mrs. Hynds, the only one of the children who testified in this case, says that her father got a housekeeper to look after the children when her mother was taken away; she says that she went to see her mother twice after she was taken away, and before she died,—the last time, the fall before her mother died. Mrs. Hynds was three or four years old when her mother was taken away, and the other children were all small. She says that her father told all the children about the divorce, at about the time he got it. She says further that she and the other children knew for a great many years that her father had sold this land in controversy, and that none of them ever objected to it; but she says they didn't understand it until afterwards. It will be observed that the times of the alleged cruelty were all before Christiana was adjudged insane. It is appellees' contention that, therefore, the cause of action for a divorce had fully matured, and accrued before Christiana was declared insane. The evidence taken in the divorce case was not preserved, and it is not shown in this case what the evidence was.

Plaintiffs urge that it is not shown by the evidence in this case that the acts of cruelty charged in the divorce case were not committed by Christiana after, and while, she was insane. Plaintiffs did not attempt to show that; and, as said, it was not shown by either side. But surely, the presumptions are not against the decree, but rather for it. We may state, in

1. DIVORCE: presumption *in re* decree against insane defendant.

passing, that the mortgage given to Milburn by James Pollock was before this court about 20 years ago. *Pollock v. Milburn,* 112 Iowa 528. While the only question in that case was whether Pollock was entitled to the statutory penalty for failure to satisfy the mortgage, the court did say that there could be no question as to the effect of a divorce on the statutory interest of the guilty party in the land of the other spouse, and that the court was bound to presume that the decree of divorce was regular and valid in all respects. Still, because of the provisions of the mortgage itself as to an indemnity to Milburn if the divorced wife should ever set aside the deed, the mortgagor was not entitled to a cancellation, or to the penalty for failure to cancel. It was held that the indemnity was a continuing one, for that the divorced wife might, for proper cause, have the decree of divorce set aside. The opinion does not state what a proper cause would be for setting aside the decree. It goes without saying that fraud practiced upon her or upon the court would have been a cause. The decree never was set aside, nor was it ever attacked during the lifetime of Christiana by her or by the plaintiffs or by anyone.

James Pollock died in 1912. Christiana died April 17, 1918, both intestate. This suit was brought within a year thereafter—March 10, 1919. On May 5, 1899, or about two years after the divorce, and while plaintiffs were still young, James Pollock married another woman, who is now living, as is a child which was born to them after such marriage. As before stated, Cain married another woman, soon after Christiana divorced him, and Cain's said second wife died about six months before the trial of this case. It is conceded that, on the first day of May, 1895, James Pollock executed a mortgage to Miller, on the lands in controversy. It is further conceded that, in 1900, nearly two years after James Pollock had married the second time, Pollock and his second wife, Katie, conveyed, by warranty deed, 70 acres of the land in controversy to James W. Good; that, in 1903, Good conveyed to Quass; that thereafter, Quass sold the premises, in 1905, to Nora E. Nelson; and that thereafter, the said Nelson sold and conveyed the premises, in 1916, to defendants Morris. These conveyances were for the full value of the land, as was the conveyance to Milburn by

the deed before referred to. The conveyances from Pollock to Good, and on down to Morris, were all duly recorded, within a day or two of the execution thereof. The conveyance to Good was subject to two mortgages to McMann and Hepker. When Milburn bought 50 acres of the land in controversy from Pollock, there was a mortgage on it, signed by James and Christiana Pollock, which Milburn has paid off. The total paid was $535. He bought the 50 acres at $18 per acre, which he says was more than had been paid for anything that adjoined it, and better land. No one has paid Milburn, or offered to pay him, the amount of the mortgage he paid off. Milburn knew Christiana all his life, and knew that she was in the insane hospital. It was well known in the community that Christiana was in the asylum. Defendant Morris lived in that neighborhood, but he was quite young at that time. It is conceded that Milburn paid the taxes on his part of the land from and including the year 1895, and that, since December 4, 1900, Good and his successors in title, and defendants Morris, have had the possession and claimed exclusive ownership of all the land described in the petition, as belonging to defendants Morris, and that they have paid the taxes and exercised full ownership and control of the same since 1900. In 1916, while Nora E. Nelson was the owner of the land conveyed by Pollock to Good, she brought an action in Linn County, to perfect and quiet the title to said lands. Decree was rendered April 14, 1916, quieting title in her. Original notice of this suit was served by publication. An answer by the guardian ad litem of Christiana Pollock was filed. Plaintiffs were not served with such notice, and were not parties to the action.

1. The appellants allege in their petition that the decree of divorce obtained by James Pollock was obtained by fraud and misrepresentation, and is void and of no effect. They state that, this being so, they rely upon Section 3453 of the Code, and that they have a right to commence this action within one year after the death of Christiana Pollock. The argument is that she had the legal right, at any time within one year after she regained her sanity, to commence the action to set aside the decree in the divorce case, and the deed; and they claim further that "by

2. DIVORCE: decree against insane defendant: fraud.

her death she regained her sanity, and that her heirs may bring the suit." They contend further that all acts of an insane person are void, and that the decree of divorce and the conveyance may be successfully attacked after the death of both husband and wife, when such transactions are tainted with fraud, and property rights are affected. On the first proposition, appellants cite *Black v. Ross*, 110 Iowa 112. This case holds that, after the statute of limitations once commences to run, it is not tolled by the subsequent disability of him in whose favor the cause of action exists, and that the exception in favor of insane persons under Section 3453 applies only to such causes of action as accrue during disability. In the instant case, if the decree of divorce was binding, and if there was no fraud in procuring it, then there was no cause of action in favor of Christiana to which the statute of limitations and the one-year extension by Section 3453 could apply. She would have had the right after the decree was entered; and possibly plaintiffs, under some circumstances, could do so, if they were able to establish the fraud. There was no appeal from the decree of divorce, and a party may not appeal from one district court to another; although, of course, one court may set aside the decree of another, if there is some sufficient reason for it, as want of jurisdiction, fraud, and the like. The trial court in the divorce case, with the evidence before it, was in a better position to decide the case than was the district court or this court in this case, without the evidence. Appellants also cite *Jefferson v. Rust*, 149 Iowa 594, 598, to the proposition that the cause of action accrued in this case during the disability. The question in the case cited was one of fact as to whether the disability continued at all times after the cause of action arose. In the instant case, it appears to us that the question is one of fact whether any cause of action arose: that is, whether the fraud alleged by plaintiffs to have been perpetrated has been established. Appellants also cite *Pollock v. Milburn*, supra. This case has been sufficiently referred to. Appellants cite also *Wood v. Wood*, 136 Iowa 128, 131. That case was decided on demurrer to the petition. The demurrer admitted the fraud alleged. The case was brought to annul a marriage, on the ground that the defendant was insane at the time of the marriage. Some of the

circumstances in that case showing fraud were that the plaintiff had brought an action for annulment on the same ground, and after trial, the court found against the plaintiff,—that is, that defendant was not insane at the time of the marriage. A short time thereafter, the plaintiff, through another attorney, and after the appointment of a different guardian ad litem, knowing that his wife was not insane at the time of the marriage, brought another action for annulment on the same ground, and concealed from the trial court the fact of the prior proceedings, falsely alleging that she was insane, knowing that she was not so. The annulment was granted. It was held that, the wife being helpless and confined in the asylum, it was a fraud to prosecute the second action under the circumstances disclosed, and sufficient to set aside the decree. The only basis for the action in that case was the fraud in obtaining the divorce. It was further held in the case that, under the circumstances, where property rights were involved, the action might be maintained, though the original parties were dead. It was further held in that case that, even though the party was of unsound mind, that did not prevent a defense by guardian ad litem. The condition of the mind of defendant was disclosed by the record.

Lawrence v. Nelson, 113 Iowa 277, sustains appellants' contention that, in a proper case, a decree of divorce may be set aside for fraud, after the death of the other party, where property rights are involved. In that case, that the widow was entitled to a pension gave her sufficient property interest to entitle her to annul a fraudulent divorce. To like effect see 22 Cyc. 1133; Lawrence v. Nelson, 57 L. R. A. 583; Willis v. Sharp, 5 L. R. A. 637. At this point, appellees cite Willis v. Robertson, 121 Iowa 380, 384. Their contention is that, if James Pollock was guilty of fraud in procuring the divorce, and thereby undertook to defeat his wife of her inchoate interest in his real estate, his heirs are estopped to take advantage of such fraudulent act, because the title, which they now seek, comes directly from him, and they will not be permitted to take advantage of his wrongful act, and thereby deprive the present owners of the real estate, who purchased it for value. It was said in the Willis case:

"Moreover, if there were fraud, Anthony Robertson par-

ticipated therein, and neither he nor his heirs or devisees may avail themselves thereof. The conveyance was good as to everyone save the wife; and even if it were not, the grantor was so involved in the fraud that a court of equity will not permit him or his heirs or representatives to take advantage thereof."

The appellants allege further that the court, in granting such divorce, was without jurisdiction, because the court could not grant a decree when the party defendant was insane. The pleading in regard to fraud is in the nature of a conclusion. We have set out the evidence fully. It appears that the proceedings were, in all respects, regular and legal, and it appears to us that no fraud has been established.

2. Appellants' next proposition, as before stated, is in regard to the jurisdiction of the court in the divorce case, to grant a decree while Christiana was insane. Insanity is not a ground for divorce, and that was not the charge. It is true, as stated, defendants did not offer testimony to show that James Pollock's cause of action for divorce accrued before Christiana was adjudged insane. Neither side offers such testimony. The circumstances in regard to this have been sufficiently stated earlier in the opinion. Appellants concede that the authorities, or some of them, hold that a valid decree of divorce may be granted against a person then insane, if the grounds for such divorce existed prior to the insanity of such a defendant. They think the better rule is that a divorce may not be granted at a time when defendant is incompetent to understand, or to take proper measures to make defense. This ignores the right of defense by guardian ad litem. *Wertz v. Wertz,* 43 Iowa 534, holds that acts of cruelty while a party is insane are not grounds for divorce.

3. DIVORCE:
insanity of
defendant.

Appellees cite *Mohler v. Estate of Shank,* 93 Iowa 273. It was there held that the guardian of one insane could not maintain an action for divorce in behalf of his ward, and that a decree upon his application was void. The weight of authority is clearly against the proposition advanced by appellants. Appellees contend that the divorce was valid, and, being without fraud, was and is binding upon Christiana and her heirs. The first case cited is *Douglass v. Douglass,* 31 Iowa 421. The ground for divorce in that case was desertion. The divorce was granted.

The desertion in its inception was wrongful, and without reasonable cause; but the full two years had not elapsed before the defendant was adjudged insane. It was held, notwithstanding this, that, though a part of the two years was during the insanity of the defendant, the divorce should be granted. It may be that this thought has been qualified somewhat by some of the other decisions, but the cases generally hold that, where the cause of action is complete, as in this case, prior to insanity, a divorce may be granted for a cause of action fully accrued prior thereto. We shall not stop to discuss or analyze the cases separately, but content ourselves with the citation thereof. See *Wright v. Wright*, 125 Va. 526 (4 A. L. R. 1331, and note), where it was said that it may be regarded as settled by the greater weight of authority that the insanity of the defendant is no bar to the prosecution of a suit for divorce, for a cause which accrued before such insanity began. That was a case of desertion, where the defendant became insane after the initial act of desertion, but before the statutory period had expired, and the divorce was denied because the cause of action had not fully accrued before the insanity. To the same effect see 9 Ruling Case Law 357. But where the cause of action has accrued, as in this case, before the insanity, the insanity is no defense. It is said in 9 Ruling Case Law 375, 376:

"In this country, it is a well established rule that a proceeding for divorce may be instituted against an insane spouse for a cause of divorce accruing while he or she was sane. His or her subsequent insanity is not, under modern laws, regarded as a bar to such proceedings, the conflict on this point being practically confined to a few early English cases which later were either reversed or overruled."

Many cases are cited in the note, to sustain the text. See, also, 9 Ruling Case Law 358; *Harrigan v. Harrigan*, 135 Cal. 397; 19 Corpus Juris 76, 77; 14 Cyc. 654, and cases; *State v. Murphy*, 29 Nev. 149 (85 Pac. 1004). We are of opinion that the divorce was properly granted, and that no fraud has been established. This being so, the decree is binding upon these plaintiffs.

3. Other circumstances in the record, which we shall not stop to again refer to, satisfy us that the equities are with the

defendants. The case is somewhat like the *Wood* case, 143 Iowa 440, where, at page 443, we said:

4. DEEDS: deed by insane wife followed by her divorcement.

"'The defendants are all concededly innocent of any wrong on their part. The decree under consideration was never questioned during the lifetime of the parties thereto. At the time it was obtained, two of the children, plaintiffs herein, were adult, and knew every fact then which they know now. The third was a member of her father's family, 16 years of age. It goes without saying that we would not be justified in setting aside the decree upon which innocent parties have relied and acted for nearly 20 years, except upon substantial evidence. We are unable to find such evidence in this record.''

One or two other points made by appellees may be briefly noticed. One of these is that, where the court is advised of the circumstances, and the guardian ad litem files answer and appears for his ward, the judgment of the court is binding upon such incompetent, and all persons claiming by, through, or under him. *Harris v. Bigley,* 136 Iowa 307; *Wood v. Wood,* 136 Iowa 128; *Buchan v. German Am. Land Co.,* 180 Iowa 911, 914. The correctness of the findings of the court in the divorce case cannot be reviewed in this case, which we are now considering. They were fairly before it, and embraced within its finding; the decree is unassailable by these proceedings, unless fraud be proven. *Harris v. Bigley,* supra; *Wood v. Wood,* 143 Iowa 440; *Buchan v. German Am. Land Co.,* supra.

It seems unnecessary to spend any time in discussing the deed from James and Christiana Pollock to the Milburns. It will be remembered that that deed was made in 1894. The decree of divorce, with the provision as to property, was rendered some two years after that. As to the decree disposing of the property of the guilty party, in addition to the cases cited in *Pollock v. Milburn,* supra, see *Hamilton v. McNeill,* 150 Iowa 470. Though the point is not raised, it might be a matter of importance that, after Christiana Pollock secured her divorce from her first husband, Cain, he married another woman, and after James Pollock secured his divorce from Christiana, he married again, and has a wife and child now living. *Brett v. Brett,* 191 Iowa 262.

We are of opinion that the trial court correctly decided the case, and the judgment is—*Affirmed.*

Evans, C. J., Weaver and De Graff, JJ., concur.